# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>(1) KEITH DAVID ROSENBLUM, and<br>(2) MARTIN WAYNE MEISTER,<br><br>Defendants. | Criminal No. 07-294 (JRT/FLN)<br><br>**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL** |

> David M. Genrich, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.
>
> Peter B. Wold, **PETER B. WOLD, P.A.**, 247 Third Avenue South, Minneapolis, MN 55415, for defendant Keith Rosenblum.
>
> William J. Mauzy, **LAW OFFICES OF WILLIAM J. MAUZY**, 510 First Avenue North, Suite 610, Minneapolis, MN 55403, for defendant Martin Meister.

Defendant Keith Rosenblum was convicted after a jury trial of one count of conspiracy to defraud the United States, two counts of violating discharge permit conditions by failing to make required notifications, and ten counts of negligent violation of the Clean Water Act ("CWA"). Defendant Martin Meister was convicted of eight counts of negligent violation of the CWA. Rosenblum and Meister have now filed separate motions for judgment of acquittal or for a new trial. For the reasons given below, the Court denies the motions.

**ANALYSIS**

**I.   STANDARDS OF REVIEW**

Rule 29 of the Federal Rules of Criminal Procedure permits the Court to enter a judgment of acquittal if the evidence is insufficient to sustain the conviction.  The standard for determining whether evidence is insufficient is very strict, requiring acquittal only where there is "no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt."  *United States v. Gomez*, 165 F.3d 650, 654 (8th Cir. 1999).  In making this determination, the Court looks at the evidence in the light most favorable to the verdict, and accepts as established all reasonable inferences supporting the verdict.  *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002).

Federal Rule of Criminal Procedure 33 permits the Court to grant a new trial "if the interest of justice so requires."  The Court has "broad discretion in ruling upon a motion for new trial," *United States v. Bennett*, 956 F.2d 1476, 1481 (8th Cir. 1992), but a motion should be granted only "sparingly and with caution."  *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004).

**II.   ROSENBLUM'S MOTION**

   **A.   Conspiracy to Defraud the United States**

Rosenblum first argues that there was insufficient evidence at trial showing that he specifically intended to defraud the United States by hampering and obstructing the functions of the Environmental Protection Agency ("EPA").  Specifically, Rosenblum

points to the testimony of Ahto Niemioja, an expert consultant hired by Rosenblum to advise him on regulatory compliance issues.  Rosenblum argues that his reliance on Niemioja's advice demonstrates that his actions with respect to EPA investigators were taken in good faith, and that this evidence of good faith precludes a finding of specific intent to defraud.

While Niemioja's testimony may have supplied evidence of Rosenblum's good faith, the jury also heard evidence supporting a finding of intent to defraud.  For example, the prosecution introduced into evidence two internal memoranda circulated to Eco Finishing[1] employees just prior to wastewater testing by the Metropolitan Council Environmental Services ("MCES").  These memoranda instructed Eco employees to make specific changes in wastewater discharge procedures while MCES was monitoring Eco's wastewater.  The prosecution also introduced evidence of internal Eco spreadsheets that tracked the cyanide levels in Eco's wastewater discharges.  The spreadsheets showed cyanide levels in excess of Eco's wastewater discharge permit prior to MCES sampling in January 2004, but within Eco's permit during the period of MCES monitoring.  The spreadsheets then showed a spike in cyanide levels in the days immediately following MCES monitoring.  In addition, the jury heard testimony from Eco employees regarding internal communications with Rosenblum suggesting that Rosenblum was attempting to conceal Eco's permit violations from MCES.  Tom Alexander, Eco's environmental manager in 2004, testified that Rosenblum angrily reprimanded him after he reported to

---

[1] Defendant Rosenblum is the President and Chief Executive Officer of Eco Finishing ("Eco"), a metal finishing business involved in the plating, polishing, and coating of various metal products.  Defendant Meister served as Eco's plant manager beginning in 2004.

MCES a cyanide spike in excess of Eco's permit. Eugene Schablin also testified that he was instructed, with Rosenblum's approval, to pump rinse water containing untreated zinc directly down the drain.

Viewing this evidence in a light most favorable to the verdict, the Court finds that these internal documents and witness testimony, even when considered next to the testimony of Niemioja, are sufficient to allow a reasonable jury to reject a good faith defense and to conclude that Rosenblum intended to defraud the United States. Accordingly, the Court denies Rosenblum's motion for judgment of acquittal or for a new trial with respect to his conviction for conspiracy to defraud the United States.

### B.     Violations of the Clean Water Act

Rosenblum next argues that the prosecution's evidence was insufficient to sustain a guilty verdict on his conviction of negligent violations of the Clean Water Act. Rosenblum was charged in Counts 2 through 9 of the indictment with knowingly discharging pollutants between March 18 and March 25, 2005, in excess of Eco's wastewater discharge permit and in violation of 33 U.S.C. § 1319(c)(2)(A).[2] Both defendants requested that the jury be instructed on the lesser included offense of negligent violation of the CWA. *See* 33 U.S.C. § 1319(c)(1)(A). The Court granted that request, instructing the jury that if it was unable to reach a verdict as to the knowing discharge of pollutants as charged in Counts 2 through 9, it should then consider whether

---

[2] Defendant Meister was similarly charged in Counts 2 through 9 with knowing violations of the CWA.

the defendants are guilty or not guilty of negligent violations of the CWA. *See* Model Criminal Jury Instr. for the Eighth Circuit, § 3.10 (2007) (providing lesser included offense instruction); *see also United States v. Ahmad*, 101 F.3d 386, 392 (5th Cir. 1996) (finding that where defendant is charged with knowing violations of the Clean Water Act, jury instruction on lesser included offense of negligent violations of the CWA is appropriate). The jury was unable to reach a verdict on the charges that Rosenblum knowingly discharged pollutants in violation of the CWA, but convicted Rosenblum on the lesser included offenses of negligent violation of the CWA.

Rosenblum now argues that there was insufficient evidence at trial showing that he knowingly discharged pollutants between March 18 and March 25, 2005, as charged in the indictment. However, Rosenblum was not convicted of knowing violations of the CWA. Rather, as noted above, Rosenblum was convicted on the lesser included offenses of negligent violation of the CWA. Further, the Court finds sufficient evidence that would allow a jury to conclude that Rosenblum failed to exercise reasonable care and caused the pollutants to be discharged. Specifically, internal Eco documents and employee testimony showed that Eco changed its wastewater discharge procedures when MCES conducted monitoring; that Eco's discharges were in violation of its permit both before and after MCES conducted on-site monitoring; that Rosenblum was aware of violations of Eco's discharge permit; and that Rosenblum reprimanded an employee for reporting to MCES a spike in cyanide levels exceeding Eco's permit limit. Viewing this evidence in a light most favorable to the verdict, a jury could reasonably infer that Rosenblum knew or should have known that Eco's discharges between March 18 and

March 25, 2005, exceeded the wastewater discharge permit, and that Rosenblum's failure to exercise reasonable care caused the illegal discharges. As such, the Court denies Rosenblum's motion for judgment of acquittal or for a new trial on this basis.

### C. Jury Instructions

Rosenblum also argues that the Court's decision not to provide several of his proposed jury instructions was error and requires a new trial.[3] Rosenblum first argues that the Court erred in its instructions to the jury regarding Rosenblum's failure to notify MCES of permit violations, as charged in Counts 11 and 13 of the indictment.[4] The Court instructed the jury that to convict Rosenblum it had to find that Rosenblum "failed to notify [MCES] within 24 hours of becoming aware of any violation of Eco Finishing's Permit discharge limits," as provided in Eco's discharge permit.

Rosenblum argues that the conditions contained in Eco's permit – including the 24-hour reporting requirement – merely give guidance to Eco as to wastewater discharge protocols, but do not constitute controlling law. Rosenblum notes that the Environmental Protection Agency delegated authority to the Minnesota Pollution Control Agency ("MPCA") to approve local pretreatment programs, and the MPCA in turn approved the MCES Waste Discharge Rules pursuant to that authority. *See* 40 C.F.R. § 403.3(d). As such, Rosenblum contends, Eco's wastewater discharge permit represents a mere

---

[3] The Court notes that each of Rosenblum's arguments was raised during the Court's jury instruction charge conference.

[4] Rosenblum raises a similar argument with respect to the failure to submit laboratory reports as required under Eco's permit and as charged in Counts 10 and 12 of the indictment.

application of the approved Discharge Rules and, to the extent the permit provides more stringent requirements than the Discharge Rules, the Rules must control. Rosenblum argues that because the Discharge Rules contain no 24-hour reporting requirement,[5] he cannot be convicted of a CWA violation for failure to notify MCES of a violation within 24 hours.

The Court is not persuaded that Rosenblum's conviction for violating the CWA cannot be based on violations of Eco's permit conditions. The plain language of the CWA provides that the violation of statutory provisions "or *any permit condition or limitation* implementing any of such sections in a permit" constitutes a violation of the CWA punishable by fine or imprisonment. 33 U.S.C. §§ 1319(c)(1)(A), (2)(A) (emphasis added); *see also United States v. Sinskey*, 119 F.3d 712, 715 (8th Cir. 1997) (stating that the CWA "prohibits the discharge of pollutants in amounts exceeding the limitations specified in an NPDES permit"); *Citizens Legal Envtl. Action Network, Inc. v. Premium Std. Farms, Inc.*, No. 97-6073, 2000 WL 220464, at *1 (W.D. Mo. Feb. 23, 2000) ("If the recipient violates the terms of an NPDES permit, it has violated the CWA itself and may be sued therefore."). Further, as the prosecution correctly notes, the MCES Waste Discharge Rules expressly provide that noncompliance with provisions of any permit is a violation. *See* MCES Waste Discharge Rules § 501.00 ("Noncompliance with provisions of these rules or any permit issued under these rules and all standards, variances, limitations, orders, stipulations, agreements, or schedules of compliance shall

---

[5] Rosenblum notes that the Discharge Rules do contain a 24-hour reporting requirement in the context of mandatory quarterly reporting periods, *see* 40 C.F.R. § 403.12(g)(2), but that he was not charged with failing to report permit violations during such periods.

constitute a violation."). The Discharge Rules also state that a permittee must comply with the permit notwithstanding less stringent provisions of the general pretreatment regulations. *Id.* §§ 409.00, 104.07. Accordingly, the Court concludes that its instructions to the jury with respect to Counts 10 through 13 of the indictment were proper.

Rosenblum next argues that the Court should have instructed the jury on a "mistake-of-fact" defense. Rosenblum contends that he was advised by Niemioja that he was not required to report to the MCES evidence of discharge violations contained in internal Eco spreadsheets, and therefore he was mistaken as to his reporting obligations. In *United States v. Sinskey*, the Eighth Circuit addressed whether, to prove a knowing violation of the CWA, the prosecution must show that the defendant knew his conduct violated the CWA. 119 F.3d at 115. The court found that it did not, holding that the word "knowingly" under the CWA "applies to the underlying conduct" that is prohibited by the CWA or the permit. *Id.*

Here, while Rosenblum correctly notes that a mistake-of-fact defense is not precluded under *Sinskey*, *see* 119 F.3d at 716-17, he does not contend that there was a mistake as to whether Eco's internal spreadsheets detailing discharge violations were, or were not, withheld from MCES. Had Rosenblum presented evidence that he mistakenly believed the spreadsheets in question were, for example, Eco marketing literature, a mistake-of-fact instruction may well have been appropriate. *Cf. id.* (noting that a defendant who mistakenly believed he was discharging water, rather than gasoline, into nearby creeks was entitled to a mistake-of-fact instruction on charge of knowingly

- 8 -

violating the CWA) (citing *United States v. Ahmad*, 101 F.3d 386, 391 (5th Cir. 1996)); *see also United States v. Iron Eyes*, 367 F.3d 781, 785 (8th Cir. 2004) (stating that trial court should provide mistake-of-fact instruction when a defendant presents evidence of a mistake of fact and proffers an appropriate jury instruction).  However, the evidence presented at trial showed that Rosenblum was fully aware that he was not reporting spreadsheets detailing Eco discharge violations – the very conduct prohibited under the permit and the CWA.  As such, Rosenblum's argument that he did not realize he needed to report the spreadsheets to MCES is squarely foreclosed by *Sinskey*, and does not entitle Rosenblum to a mistake-of-fact instruction.

Finally, Rosenblum argues that the Court erred in denying his request for an estoppel instruction pursuant to *Raley v. Ohio*, 360 U.S. 423, 438 (1959).  "The defense of entrapment by estoppel is implicated where an agent of the government affirmatively misleads a party as to the state of the law and that party proceeds to act on the misrepresentation so that criminal prosecution of the actor implicates due process concerns under the Fifth and Fourteenth amendments." *United States v. Nichols*, 21 F.3d 1016, 1018 (10th Cir. 1994).  To support a defense of entrapment by estoppel, there must be "active misleading" by the government agent.  *Id.* (quoting *Raley*, 360 U.S. at 438).

Rosenblum contends that the evidence at trial supported a defense of entrapment by estoppel, and points specifically to the conduct of MCES employee Tim Rothstein, who was aware that Eco was in violation of its permit but failed to inform Rosenblum that he should report the violations.  The Court is not persuaded that such conduct amounts to the kind of active misleading that would support an estoppel instruction.  *Cf.*

*Cox v. Louisiana*, 379 U.S. 559, 560 (1965) (finding estoppel applied where defendants were affirmatively told they could hold a demonstration on the sidewalk across from the courthouse, but were later prosecuted under a statute prohibiting protests "near" the courthouse); *United States v. Aquino-Chacon*, 109 F.3d 936, 939 (4th Cir. 1997) (stating that a defendant asserting entrapment by estoppel "must demonstrate there was 'active misleading' in the sense that the government actually told him that the proscribed conduct was permissible"); *Lavin v. Marsh*, 644 F.2d 1378, 1382 (9th Cir. 1981) ("[T]o invoke estoppel . . . the party claiming estoppel must show 'affirmative misconduct' as opposed to mere failure to inform or assist."). Moreover, Rothstein testified at trial that he affirmatively informed Eco chemist Ted Gibbons that all wastewater monitoring data collected by Eco must be reported under the permit. For these reasons, the Court finds that the evidence at trial did not support Rosenblum's request for an estoppel instruction and that the refusal to give such an instruction does not require a new trial.

### III. MEISTER'S MOTION

Meister was convicted of eight counts of negligently discharging pollutants between March 18 and March 25, 2005, in violation of Eco's wastewater discharge permit. Relying primarily on his own testimony during trial, Meister asserts broadly that there was insufficient evidence presented at trial to allow a jury to conclude that his conduct caused the illegal discharges. Meister points generally to emails sent by Eco chemist Gibbons to Meister, to which Gibbons attached spreadsheets detailing Eco's internal wastewater monitoring and showing discharges in excess of permit limits. Meister contends that the evidence demonstrated that he never opened the spreadsheet

attachments, was unaware of the discharges, and thus could not have caused the illegal discharges. Meister also points to two internal memos from March 2005 that instructed Eco employees on changes to Eco's wastewater treatment procedures to be implemented during MCES monitoring. Meister argues that there is insufficient evidence showing that he prepared, implemented, or was otherwise connected with the March 2005 memos, and that once again there is no evidence showing that Meister's conduct caused the discharges in question.

The Court is not persuaded that there is no interpretation of the evidence that would allow a reasonable jury to find that Meister's conduct caused the illegal discharges. Although Meister testified that he never opened attached spreadsheets containing discharge reports, Jonathon Diehl, Eco's waste treatment operator, testified that he had conversations with Meister on a daily basis concerning Eco's internal laboratory reports and discharge levels. Diehl testified that Meister would speak with him whenever there was a spike in Eco's pollutant discharges, and that in general Meister was fully aware of Eco's illegal discharges. Diehl also testified that Meister participated in a conversation about staying in compliance during MCES monitoring, which resulted in the January 2005 memorandum. In addition, Eco chemist Ted Gibbons testified that he handed the March 15, 2005 memo to Meister, who reviewed it and then asked Gibbons to generate a second memo.[6] The second memo directed Eco employees to

---

[6] Meister attacks Gibbons's credibility on grounds that he testified inconsistently in grand jury proceedings in the case. However, Meister's counsel vigorously cross-examined Gibbons on this issue, providing the jury with ample opportunity to assess the veracity of Gibbons's testimony. This Court will not revisit such determinations in a post-trial motion for judgment of

(Footnote continued on next page.)

leave water running on the second and third shifts on the "anodize and hard coat lines." Gibbons testified that the effect of these procedures was to clean the wastewater during MCES monitoring. Dave Young, an employee at MCES, testified that immediately following MCES's overt testing at Eco in March 2005, MCES detected substantial spikes in pollutant levels in Eco's wastewater from March 18 through March 25, 2005.

Viewing these facts in a light most favorable to the verdict, the Court finds sufficient evidence from which the jury could reasonably infer that Meister knew Eco was discharging wastewater in violation of its permit between March 18 and March 25, 2005, and knowingly or negligently failed to prevent these illegal discharges, making him liable as a responsible corporate officer of Eco.[7] *See* 33 U.S.C. § 1319(c)(6); *see also United States v. Hansen*, 262 F.3d 1217, 1250 (11th Cir. 2001) (defining "responsible corporate officer" under the CWA). In addition to corporate officer liability, the evidence at trial was sufficient to support Meister's conviction for negligent violation of the CWA. The testimony discussed above showed that Meister was generally aware that Eco was discharging wastewater in violation of its permit, knowingly or negligently

---

(Footnote continued.)

acquittal. *See United States v. Engler*, 521 F.3d 965, 973 (8th Cir. 2007) (stating that a district court must "neither assess the witnesses's credibility nor weigh the evidence" in considering a motion for judgment of acquittal).

[7] The Court instructed the jury that Meister could be found guilty of violating the Clean Water Act as a "responsible corporate officer" if the prosecution proved (1) that the defendant had knowledge of the acts that resulted in the alleged violation, (2) that the defendant had the authority and capacity to prevent the acts, and (3) that the defendant knowingly failed to prevent the acts charged in the indictment. *See* Court's Instruction No. 33.

acquiesced to the change in procedures outlined in the March 2005 memos, and that such changes caused the permit violations between March 18 and March 25, 2005.[8]

In sum, the Court finds sufficient evidence to support Meister's conviction for negligent violations of the CWA as charged in Counts 2 through 9 of the indictment. The Court therefore denies Meister's motion for judgment of acquittal or for a new trial.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Rosenblum's Motion for Judgment of Acquittal or New Trial [Docket No. 123] is **DENIED**.

2. Defendant Meister's Motion for Acquittal or New Trial [Docket No. 120] is **DENIED**.


DATED:  August 29, 2008                        s/ John R. Tunheim            _
at Minneapolis, Minnesota.                         JOHN R. TUNHEIM
                                                United States District Judge

---

[8] Meister also contends that he was not aware that the discharges would result in permit violations for pH limits, as charged in Counts 2 and 6 of the indictment. However, the jury was properly instructed that to convict Meister on these counts, it needed to find that he acted knowingly or negligently with respect to the discharge violation. (Court's Instructions Nos. 30, 34.) The jury was further instructed that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. (Court's Instruction No. 35.) Here, the Court finds sufficient evidence to allow a reasonable jury to conclude that Meister knew or should have known that changes to Eco wastewater protocols during and after MCES monitoring would naturally result in permit violations, including the discharge of pollutants in excess of the permit's pH limits.